ROANE, Judge.
This case viewed in its proper light, is really a very short one, and as I think a very plain one. It has but two real questions in it. 1. Whether the contract was usurious? 2. Whether the claim is barred by the statute of limitations?
In order to simplify the case, I may throw out of it some points which are too plain for discussion. As first whether the mortgage extinguished the bill of exchange? 2. whether the securities Brooke and Aylett became bound, by their agreement, to pay 10 per cent interest, in the event of the bills being or having been protested? As to the first, it is clear that the mortgage recognized the bill of exchange, as an existing one; and so far ■ from extinguishing it, creates an additional security for its payment. The bill of exchange therefore, and not the mortgage, is the contract which ^determines the rate of interest to be paid, and is the contract really sued upon. As to the second, the general agreement of the parties will. extend as well to the nature as to the amount of the debt due from Braxton to Campbell; and the nature of the debt due by bill of exchange, determines the rate of interest to be paid by them on protest to be 10 percent per annum.
The question of usury is rather more difficult; but I think nevertheless sufficiently clear. I admit that, on questions of this kind we are at liberty to infer usury from the circumstances of the transaction itself. Otherwise it would be generally impossible to detect it. But in. making this inference, we are confined to the enquiry, whether there is a corrupt contract or agreement for usurious interest? Now such a contract or agreement presupposes the consent of both borrower and lender to this effect; and without it there is no usurious contract; whatever may be the hopes, wishes, or expectations of .either party. Thinking this principle to be almost self evident, I shall proceed to examine the present question by it.
The contract, by which Braxton transferred a right, to money in Scotland to Campbell, for a valuable consideration, as evidenced by the bill of exchange, was a lawful contract; and it had the concurrence of both parties thereto. It is no objection, to the legality of such contract, that the drawee is a stranger to the drawer; that the latter has no funds in the hands of the former; or that the drawee is in a line of life other than commercial. This contract is for the payment, of money in another country (not in this); and for the injury arising from a disappointment, the law has allowed an interest of 10 per cent per an-num ; and so far operates as an exception to the general act of usury.
This contract is to be considered as the real contract between the parties, unless it be subsequently ^changed, or it has been previously agreed that the bill is not to be paid, but to be protested; and the money paid here. In the last case the bill would be considered as a shift to evade the statute of usury, and conceal the real agreement of the parties.
However strong the answer of Braxton is to shew an usurious tendency and disposition in Doctor Campbell, as evidenced by the unusual circumstance of his procuring Braxton to draw on a stranger, a clergyman, and a person having no funds of the drawer; Yet he does not state any consent on his part to waive his right to consider this as a legalr bill and to procure it to be honored. He ¿oes not state any agreement on his part, subsequent to the drawing of the bill, that it should not be paid; or any previous agreement that the money was really to be paid here, and consequently, that the bill is a mere shift to evade the statute.
The question then is reduced to this short point. There is a complete agreement of both parties evidenced by the bill of exchange, that the money should be paid in Scotland. There is a hope, an expectation, and even a contrivance in the party, and probably an expectation in both, that the money should not be paid in that country, but in this; but there is no agreement, carrying this expectation into effect, barring the right of Braxton to consider the contract as a real bill of exchange and to procure a payment in Scotland, and converting the contract into an usurious one.
With respect to the plea of the act of limitations, .there is no doubt, that laying out of the case the previous acknowledgments, but the deed of Braxton to Page and White is an acknowledgment which will prevent its operation. That deed refers to the debt to Campbell as an existing one; and when it speaks of £2000, it is only as being the amount of it as supported by Campbell’s representatives: and the license of Page and *White of the 14th of April 1793 to the sheriff to sell some of the negroes, recognizes and refers to that mortgage. I think therefore the decree ought to be affirmed.
But Mr. Randolph asks to correct it. 1. In decreeing that the slaves sold to Adams by Page’s consent should be accounted for. And 2, that liberty should be reserved to the appellee to proceed against the distrib-utees of Brooke’s property.
As to the first, I answer that such of Brooke’s slaves mortgaged to Page and White, as were comprehended in the deed of mortgage from Brooke to Campbell, are now liable to Campbell, by the decree into whose hands soever they may have come, and that Campbell has no lien upon the slaves not so comprehended, but the lien as to them was only in favour of Page and White, who have released it.
And as to the second, that the distributees *267 of Brooke having given or being liable to give bond to the executor to refund, are completely entitled to their distributory shares exempt from any claim, except such as is supported by a specific lien on such property, which in this case is not I believe pretended.
FLEMING, Judge.
The counsel for the appellant made three points in this case. 1. They contended that the contract was usurious, and therefore void. 2. That the act of limitations applied in favor of the securities. 3. That the nature of the debt was altered, by security being given; from which time the‘contract was changed, and carried only S per cent interest.
As to the first, I observe, that in order to constitute usur3r, there must be a borrowing and a lending, with an intent to exact exorbitant interest beyond what is allowed by law, or a forbearance in consideration of such interest being paid. But there appears no conclusive evidence that such *was the case in the contract - now under consideration. There are indeed several suspicious circumstances respecting the bill drawn on Young ; but it is unnecessary to repeat them, as they are not sufficient, in my mind, to bring the case within the statute of usury.
As to the point of the act of limitations, I think the undertaking of the securities in December 1775 under seal, excludes them from the benefit of that act; and that Page’s undertaking to stand in the place of Aylett and to perform every engagement of his (although not under seal) bound Him to abide by every con sequence, which was to follow from Aylett’s suretyship. In addition to this, Page afterwards accepted a deed of trust from Braxton as an indemnity: Which, with the other circumstances just mentioned, certainly removes all pre-tence for the plea.
With respect to the third point, that the taking of the mortgage for security of the debt, changed the nature of the contract, and made the debt bear five per cent interest only, it is sufficient to observe, that the consideration of the mortgage expressly is, to secure the repayment of the money paid by the mortgagee for a set of bills of exchange therein described, if they should be protested ; which in that case would by law carry an interest of 10 per cent per annum. So that Campbell’s accepting the mortgage did not change the nature of the debt, but was considered merely as an auxiliary security for the payment.
Mr. Randolph thought there was error in the decree in not allowing the appellee to proceed against the legatees of Mr. Brooke for the slaves in their possession, and to pursue the mortgaged slaves purchased by Adams. But, besides the answer already given to these objections, it is sufficient to observe that those parties are not before the court, and consequently, we can make no decision affecting them. I am therefore for affirming the decree altogether.
*CARRINGTON, Judge.
Three exceptions have been taken to the decree of the Court of Chancery in this cause. 1. That the contract was usurious and void. 2. That the plaintiffs claim was barred by the statute of limitations. 3. That the 10 per cent ceased on taking the mortgage, and that only five per cent could be demanded after that period.
As to the first, it is said that the contract is usurious, and therefore void. But to constitute usury there must be a loan or forbearance; and there are no features of either discoverable in this cause. Braxton in his answer, calls the transaction a sale and purchase of two bonds for which the bills in question were drawn ; and although he afterwards speaks of them as a loan, yet from the nature of the thing in question (namely bonds) they could not have been intended to be returned: Because in that case they would have been of no use to the borrower; who contracted for them for the purpose of negotiating them in payment of his debts to others; and they were certainly drawn as a consideration for the purchase. As to the shift which has been alleged, it is possible that the intention of Campbell was to make greater profit than five per cent, but such intention is not proved. Braxton indeed states it in his answer; but the answer is not responsive to the bill, and is unsupported by testimony. Besides altho’ Braxton states that to have been Campbell’s intention, he does not say that he himself consented to it, which was necessary to form the contract between them. In short I discover no trace in the transaction so conclusive as to justify me in criminating Campbell and depriving his representatives of their debt. For there is nothing in the case out of the usual course of that kind of business; which was thus, the debtor drew bills of exchange payable to his creditor, but in case of the possibility of non acceptance an indorsor was generally required. In the present case however, in lieu of an indorsor, Braxton conveyed an estate *as a security for the large bill on Young. In this view it was a fair transactio'n, and not justly liable to any objection. But added to this, Braxton’s defence is materially weakened by his lying quiet so long, and making considerable payments, without any complaint.
Upon the whole, I consider the case as not coming within the statute of usury; and that the security taken was intended to strengthen and not to injure the plaintiffs legal rights under the bills of exchange.
The second exception was that the claim is barred by the act of limitations. But there is no ground for the objection; because the claim has been preserved, from the operation of that act, by various transactions down to the year 1792, when the suit was brought.
The third exception, taken by the appellants counsel, has been already anticipated ; and I shall only add that I think there is no weight in it.
As to the corrections asked for by the appellees counsel, it is sufficient to observe that Brooke’s representatives are not before the court, and therefore we can make no decree against them.
Upon the whole, I concur in opinion with the other Judges, that the decree was pronounced on just principles and ought to be affirmed.